**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

---

|  |  |
|---|---|
| JOANNE OEHLMANN, | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 3:06-CV-01075 |
| | : |
| | : (Judge Kosik) |
| METROPOLITAN LIFE INSURANCE | : |
| COMPANY, | : |
| | : |
| Defendant. | : |

---

## MEMORANDUM

This case concerns a dispute over Defendant Metropolitan Life Insurance Company's ("Defendant" or "MetLife") handling of a life-insurance policy claim, to which Plaintiff JoAnne Oehlmann ("Plaintiff" or "Oehlmann") is a primary beneficiary. Oehlmann's ex-husband purchased the policy for their minor daughter, who tragically died in a house fire on April 26, 2005.  Plaintiff pleaded the following causes of action: (1) bad faith; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) breach of fiduciary duty; (5) negligence; and (6) negligent infliction of emotional distress.  We have subject-matter jurisdiction of this case under 28 U.S.C. § 1332(a) (2000), as the diversity and amount-in-controversy requirements are met.[1]

### Factual Background

On February 3, 1994, MetLife issued a life-insurance policy to Todd H. Smirman ("Smirman"), on the life of his minor daughter (the "Insured").  (Doc. 32-3 at 5–6.) Smirman, purchaser of the policy, listed as primary beneficiaries both himself and the Plaintiff (the Insured's mother), to whom he was married at the time.  (Doc. 32-2 at 18.)

---

[1]The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and arises between citizens of different states. MetLife is a citizen of New York because it is a corporation organized and existing under the laws of the state of New York, and it has its principal place of business in New York, New York. Plaintiff is a citizen of Pennsylvania.

Each beneficiary was to share fifty percent of the policy proceeds; the face value of the policy was $100,000.00. (Id. at 5, 18.)  The policy was issued in the Commonwealth of Pennsylvania.[2] (Id. at 5.)

On January 8, 1999, the Court of Common Pleas of Pike County issued a divorce decree dissolving the marriage of Plaintiff and Smirman.  (Doc. 39-13 at 7.) Paragraph VI.E. of the Property Settlement Agreement of November 4, 1998, executed by the parties and incorporated into the divorce decree, provides: "The life insurance policies currently insuring the lives of the children are to remain in full force and effect with both Husband and Wife being named as beneficiaries." (Id. at 14.)  On December 19, 2001, Plaintiff remarried.  (Id. at 6.)

The Insured died in a house fire, while she was living with her mother, on April 26, 2005.  (Doc. 39-5 at 3.)  Plaintiff retained counsel on or about June, 2005, and counsel requested the requisite claims forms from MetLife.  (Doc. 39-8 at 1.)  Both Smirman and Plaintiff individually submitted claims forms to MetLife, on July 1, and July 5, 2005, respectively.  (Docs. 32-2 at 25, 39-13 at 2.)  After processing, MetLife settled the claim on July 20, 2005, and established money-market accounts for both Smirman and Plaintiff.  (Docs. 32-2 at 2, 39-14 at 1, 39-15 at 1–2.)  Each account contained 50% of the proceeds, $55,630.37.

Five days later, by letter dated July 25, 2005, counsel for Smirman notified MetLife that (1) Smirman disputed Plaintiff's right to the proceeds, and (2) an investigation of the circumstances surrounding the fire was ongoing—insinuating that

---

[2]  Neither party disputes that Pennsylvania law applies to this action.  We apply the choice-of-law rules of the state in which the district court sits when federal jurisdiction is based on diversity of citizenship. See St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n.3 (3d Cir.1991) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Under Pennsylvania choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was made. McMillan v. State Mut. Life Assurance Co. of Am., 922 F.2d 1073, 1074–75 (3d Cir. 1990); Crawford v. Manhattan Life Ins. Co., 221 A.2d 877, 880 (Pa. Super. Ct. 1966).

the fire may not have been an accident.[3]  (Doc. 32-3 at 1.)  In response to the claims of

the policyholder, MetLife issued a letter to Plaintiff's attorney on August 4, 2005, which

advised of Smirman's allegations and designated a time period during which Smirman's

counsel could investigate the allegations.[4]  (Docs. 32-4 at 1, 39-16 at 1–2.)  MetLife

requested the fire marshal's report from Plaintiff, and MetLife received the report, dated

August 4, 2005, from Plaintiff's attorney on September 13, 2005.  (Doc. 32-6 at 1.)

Also on August 4, and without knowledge of MetLife's aforementioned

correspondence of that date, Plaintiff instituted litigation against MetLife by filing a

---

[3] Relevant portions of the letter are as follows:

"I am shocked to hear that a portion of the insurance monies are being disbursed to Mrs. Oehlmann . . . .  Based on conversation with Jackie Savage, it is my understanding that the owner and beneficiary of the subject policy is Todd H. Smirman. I have enclosed a copy of the Quick Quote Summary from your office for your review. Mr. Smirman disputes that Ms. Oehlmann has any entitlement to the subject policy. Further, an investigation of this tragic event is ongoing as circumstances were suspicious."

(Doc. 32-3 at 1.)  Smirman's attorney again raised these issues in a follow-up letter to MetLife dated August 15, 2005:

"[T]he circumstances surrounding the fire, resulting in the death of my client's children, were suspicious and it is my understanding that the cause remains under investigation by the Fire Marshal.  Of course, it gives my client great concern regarding the distribution of proceeds until an investigation has been completed and we have received a report from same.  However, based upon your correspondence, it seems that your company would be comfortable releasing the proceeds absent an order of court directing otherwise.  My client is still contemplating same."

(Doc. 32-5 at 1.)

[4] Relevant portions of the letter are as follows:

"We have been contacted by Attorney Kelly Gaughan on behalf of Todd Smirman, questioning the beneficiary arrangements on this policy.  We have advised Attorney Gaughan that although Todd Smirman was the policy owner, the beneficiaries are Todd Smirman and Joanne Oehlmann.  Currently we are holding the Total Control Account checkbooks to allow Attorney Gaughan time to review the beneficiary designation. Your patience is appreciated."

(Doc. 32-4 at 1.)

Praecipe for Writ of Summons in the Pennsylvania Court of Common Pleas of Pike County.  (Doc. 32-2 at 3.)

By letter dated September 27, 2005, MetLife ruled the fire not suspicious, and notified Plaintiff and Smirman regarding same, but explained that Plaintiff and Smirman were still considered rival claimants given Smirman's belief that he was the sole beneficiary of the proceeds.  (Docs. 32-2 at 3–4, 32-7 at 1–2.)  Additionally, Plaintiff's litigation against MetLife was still pending.  (Doc. 32-7 at 2.)  As the proceeds had already been disbursed to the money-market accounts, MetLife told the parties that it would distribute the accounts once each side had executed a settlement agreement and release.  (Docs. 32-7 at 2, 32-8 at 1.)  The relevant portions of the release sent to Oehlmann are as follows:

> [I]n consideration of the sum of Fifty Thousand Dollars ($50,000.00), . . . Releasors, their successors and assigns, and anyone claiming under them, hereby releases, discharges and acquits Metropolitan Life Insurance Company and its representatives, . . . from any and all claims, including, without limitation, claims for breach of contract, denial of benefits, bad faith, unfair claims practices and/or statutory violations, breach of the implied covenant of good faith and fair dealing, exemplary or punitive damages, consequential damages for financial loss, emotional distress, breach of fiduciary duty, negligence and attorney's fees, as well as all other claims, demands, sums of money, actions, rights, causes of action, obligations and abilities of any kind of nature whatsoever which Releasors may have had or claimed to have had, or now has or claims to have, or hereafter may have or assert to have [relating to Policy No. 945 000 604A or Pike County C.C.P. No.: 921-2005],
>
> and that "Releasors hereby acknowledge that payment of the amount referred to . . . above constitutes full satisfaction and discharge of all the claims, demands, sums of money, actions, rights, causes of action, debts, obligations and liabilities they have against Releasees . . . and that the sole consideration . . . for releasing said claims, demands, sums of money, actions, rights, causes of action, debts, obligations and liabilities is the payment of said sum.

(Doc. 32-7 at 1–2.)

Throughout the next months, Plaintiff's attorney continued with the litigation because MetLife would not distribute the accounts without a release, (see Docs. 32-10 at 1–2, 39-22 at 1, 39-24 at 1), and MetLife refused to disburse the proceeds absent a release, (see Docs. 32-9 at 1, 32-11 at 1–2, 32-12 at 1, 32-13 at 1–2, 3, 32-15 at 1, 39-

4

28 at 3, 39-37 at 6.)  MetLife and Plaintiff's communications make clear that MetLife insisted on the releases because it considered Plaintiff and Smirman to be rival claimants, (Docs. 39-21 at 2, 39-28 at 3, 39-32 at 2–3), and that Plaintiff refused to execute such a release because the release would waive any claim against MetLife, (Docs. 32-16 at 1, 39-30 at 1, 39-34 at 1).  Although Plaintiff's attorney notified MetLife that Smirman no longer disputed the beneficiary arrangement, MetLife received no direct communication from Smirman stating such, nor did it receive an executed settlement agreement and release from Smirman.  (Docs. 39-28 at 3, 39-32 at 2).  It appears that Smirman's counsel was non-responsive during this period, further frustrating efforts to settle this matter.  (Doc. 39-28 at 3).

By letters dated February 16, 2006 and March 14, 2006, the attorneys for Plaintiff and Smirman notified MetLife that they had agreed to split the proceeds, however the parties failed to execute the releases provided by MetLife.  (Docs. 39-34 at 1, 39-35 at 2).  At this point, Plaintiff's Pike County litigation was still pending.  In March, 2006, after talking with counsel, MetLife sent revised releases to Plaintiff and Smirman, (Doc. 39-37 at 2, 7), however each again failed to execute them (Doc. 39-38 at 1).  Plaintiff's attorney informed MetLife that the release could not be executed as written, and that he was referring the matter to new counsel.  (Doc. 32-16 at 1).  On May 8, 2006, Plaintiff's new counsel filed a new complaint in the Court of Common Pleas of Lackawanna County.  MetLife removed the matter to this court.[5]  On June 7, 2006, in addition to its answer, MetLife filed a counterclaim and third-party complaint of interpleader against Plaintiff and Smirman.[6]  (Doc. 3 at 9).  While this matter was

---

[5]Upon defense counsel's request, Plaintiff's former counsel discontinued the Pike County litigation without prejudice on August 28, 2006.

[6]According to the court's case-action memorandum of October 12, 2006, we recommended that counsel work to dismiss third-party defendant Smirman from this action.  (Doc. 9).  According to Plaintiff's counsel's letter of November 14, 2006, Plaintiff's counsel was to file a notice dismissing Smirman from the action.  (Doc. 32-19

pending during fall, 2006, Smirman orally agreed to waive any dispute to the payment of the proceeds, and executed the release for MetLife, on November 4, 2006.[7]  (Doc. 32-18).  Despite Plaintiff not executing the release, MetLife sent Plaintiff her account checkbook for the proceeds on November 14, 2006.  (Docs. 39-17 at 1, 39-23 at 9).

## Summary Judgment Standard

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Id. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 250.  The court should draw all inferences in the light most favorable to the non-moving party.  Wicker v. Consol. Rail Corp., 142 F.3d 690, 696 (3d Cir. 1998).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.  Mere conclusory allegations or denials taken from the pleadings cannot withstand summary judgment once the moving party has presented

---

at 1).  No such notice is reflected in the docket.  Accordingly, to reflect the understanding of the parties, we shall dismiss Smirman as a party from this litigation in the attached order.

[7]In the release, Smirman also took responsibility for the delay in the payment of the proceeds.  After receiving the release, MetLife sent Smirman his account checkbook.

evidentiary materials.  See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir.

1990).  Additionally, "[t]he mere presence of an expert opinion supporting the non-

moving party's position does not necessarily defeat a summary judgment motion;

rather, there must be sufficient facts in the record to validate that opinion."[8]

Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 595 (E.D. Pa. 1999) (citing Advo,

Inc. v. Philadelphia Newspapers, Inc., 51 F.3d 1191, 1198–99 (3d Cir. 1995)).

        The court considers the burden of proof to be sustained at trial when it evaluates

the motion for summary judgment.  In Pennsylvania, the insured must prove the

elements of a bad faith case by clear and convincing evidence.  Northwestern Mut. Life

Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); Cowden v. Aetna Cas. & Sur.

Co., 134 A.2d 223, 229 (Pa. 1957); Terletsky v. Prudential Prop. & Cas. Ins. Co., 437

A.2d 680, 688 (Pa. Super. Ct. 1984).  Accordingly, "the insured's burden in opposing a

summary judgment motion brought by the insurer is 'commensurately high because the

court must view the evidence presented in light of the substantive evidentiary burden at

trial.'"  Babayan, 430 F.3d at 137 (quoting Kosierowski, 51 F. Supp. 2d at 588.  A

defendant may prevail at the summary judgment stage by "affirmatively demonstrating a

reasonable basis for its actions."  Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 581

n.3 (E.D.Pa.), aff'd, 172 F.3d 860 (3d Cir. 1998) (table decision).

        If the court determines that "the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting

First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  Rule 56

mandates the entry of summary judgment against the party who fails to make a

---

        [8]As support for Plaintiff's Brief in Opposition to Defendant's Motion for Summary
Judgment, Plaintiff submitted an expert opinion regarding standard insurance claims
practices.  We have read and considered the expert opinion, however we find that the
expert opinion does not create a dispute of material fact in this matter.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Multiple readings of the parties' briefs and their exhibits make clear that no material fact is in dispute.  As such, summary judgment is appropriate.

I.      Plaintiff's Bad Faith Claim

Plaintiff asserts that Defendant acted in bad faith in violation of 42 Pa. Cons. Stat. Ann. § 8371 (2007).[9]  To succeed on a bad faith claim, a plaintiff-insured must prove (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim.  Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (recognizing that Terletsky established the test for section 8371 causes of action); Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  Bad faith may be established even when an insurer ultimately pays a claim if the delay of payment is unreasonable.  See Klinger, 115 F.3d at 234; Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 n.7 (E.D. Pa. 2001).  Additionally, bad faith can include post-litigation conduct by the insurer, although the conduct must be more than mere discovery abuses.  See Krisa v. The Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319–21 (M.D. Pa. 2000); O'Donnell v. Allstate Ins. Co., 734 A.2d 901,

---

[9] Section 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

   (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
   (2) Award punitive damages against the insurer.
   (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371 (West 2007).

907 (Pa. Super. Ct. 1999).  But see Hollock v. Erie Ins. Exch., 903 A.2d 1185, 1188–91 (Pa. 2006) (Cappy, C.J. dissenting).  The plaintiff must prove both elements by clear and convincing evidence.  Babayan, 430 F.3d at 137; Terletsky, 649 A.2d at 688.  "If there is a reasonable basis for denying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law, be bad faith."  Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000).

Plaintiff argues that we should consider alleged violations of the Pennsylvania Unfair Insurance Practice Act ("UIPA"), 40 Pa. Stat. Ann. § 1171.1–1171.15 (West 1999), and/or the regulations promulgated thereunder, the Unfair Claims Settlement Practices regulations ("UCSP"), 31 Pa. Code. § 146.1–146.10 (1997 & 2001), when we determine whether Met Life acted in bad faith.  No Supreme Court of Pennsylvania precedent exists on this issue.[10]  The Superior Court of Pennsylvania has ruled that a trial court may consider alleged violations of the UIPA or the UCSP to determine whether an insurer acted in bad faith.  See Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1233 (Pa. Super. Ct. 1994) ("[W]e find that the rules of statutory

---

[10] The Supreme Court of Pennsylvania recently recognized this issue, but saved its resolution for another day:

The first question concerns the role that the UIPA may play in a trial of a bad faith claim.  Even though it is the Insurance Commissioner who enforces the statute, there are Superior Court decisions that conclude that an insured may ask the court to consider whether an insurer's violations of the UIPA are evidence that an insurer acted in bad faith under § 8371 in handling a claim. See, e.g., Romano v. Nationwide Mutual Fire Ins. Co., 435 Pa. Super 545, 646 A.2d 1228 (1994) (holding that the insured may make reference to a section in the UIPA to illustrate its insurer's bad faith behavior for refusing to pay a loss.) But see Parasco v. Pacific Indem. Co., 920 F. Supp. 647 (E.D. Pa. 1996) (explaining that the insured's references to sections of the UIPA that cover unfair claim or settlement practices if committed with such frequency as to indicate a business practice do not show that the insurer should be liable under § 8371 for wrongfully failing to defend or settle in a particular case).

Toy v. Metro. Life Ins. Co., 928 A.2d 186, 200 n.17 (Pa. 2007); see also UPMC Health System v. Metro. Life Ins. Co., 391 F.3d 497, 505 (3d Cir. 2004) (noting that the Supreme Court of Pennsylvania has not stated whether conduct that violates the UIPA constitutes bad faith for section 8371 claims).

construction permit a trial court to consider, either *sua sponte* or upon the request of a party, the alleged conduct constituting violations of the UIPA or the regulations in determining whether an insurer . . . acted in 'bad faith.'"); The Brickman Group, Ltd. v. CGU Ins. Co., 865 A.2d 918, 929 (Pa. Super. Ct. 2004); Hayes v. Harleysville Mut. Ins. Co., 841 A.2d 121, 125 (Pa. Super. Ct. 2003);  O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999).  The Romano Court reasoned that because section 8371 lacked a definition for bad faith, under the rules of statutory construction, courts should consider other statutes regarding insurance practices, such as the UIPA, to establish standards for good faith.  See Romano, 646 A.2d at 1232–33.

Since the landmark test for bad faith was announced in Terletsky, however the federal courts sitting in diversity have abstained from applying the rule of construction announced in Romano, and have adhered to the Terletsky standard.  See UPMC Health Sys., 391 F.3d at 505–06 (applying the Terletsky test and ignoring violations of the UIPA as evidence of bad faith); Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co., 29 Fed. Appx. 823, 827–28 (3d Cir. 2002) (rejecting Romano and its progeny) (non-precedential); Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233–34 (3d Cir. 1997) (holding that until the Supreme Court of Pennsylvania rules on the issue, the Third Circuit will apply the Terletsky standard for bad faith); Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 494 (W.D. Pa. 2007); Pittas v. Hartford Life Ins. Co., 2007 WL 1454271, at *8 (W.D. Pa. May 17, 2007); Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 410 F. Supp. 2d 417, 422 (W.D. Pa. 2006); Connolly v. Reliastar Life Ins. Co., 2006 WL 3355184, at *8 (E.D. Pa. Nov. 13, 2006) (noting that the Third Circuit has observed that violations of the UIPA do not establish bad faith per se); Berks Mut. Leasing Corp. v. Travelers Prop. Cas., 2002 WL 31761419, at * 5 n.8 (E.D. Pa. Dec. 9, 2002) (noting that the relevance of the UIPA to bad faith claims under section 8371 has

been questioned in the Third Circuit; <u>Parasco v. Pacific Indemnity Co.</u>, 920 F. Supp. 647, 655 n.5 (E.D. Pa. 1996).[11]

The Third Circuit explains its rejection of the UIPA and UCSP as bad faith per se in <u>Dinner</u> as follows:

> Prior to <u>Terletsky</u>, the Pennsylvania Superior Court had looked to the UIPA and the UCSP to give content to the concept of bad faith as used in [section 8371]. <u>Terletsky</u> did not, however, and it is apparent from a comparison of the bad faith standard it adopted with the provisions of the UIPA and the UCSP that much of the conduct proscribed by the latter is wholly irrelevant to whether an insurer lacks a reasonable basis for denying benefits and, if so, whether it knew of or recklessly disregarded that fact.
> It necessarily follows that a violation of the UIPA or the UCSP is not a per se violation of the bad faith standard and that it is only the <u>Terletsky</u> standard itself that allows one to determine whether a violation of the former is of any relevance in a case like the one before us. It is also apparent that reference to the fact that the defendant's conduct violated the UIPA or the UCSP holds the potential for the jury's verdict being influenced by irrelevant matter.

<u>Dinner</u>, 29 Fed. Appx. at 827.

When we interpret state statutes, decisions of the state's highest court bind us. <u>Comm'r of Internal Revenue v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967). Absent such a decision, our task as a federal court sitting in diversity is to determine how the Supreme Court of Pennsylvania would resolve the issue if called upon to do so. <u>See</u> <u>Prudential Prop. & Cas. Ins. Co. v. Pendleton</u>, 858 F.2d 930, 934 (3d Cir. 1988). In attempting to forecast state law, a court must "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue

---

[11] <u>But see</u> <u>MacFarland v. United States Fid. & Guar. Co.</u>, 818 F. Supp. 108 (E.D. Pa. 1993) (holding that the alleged conduct constituting violations of the UIPA and the regulations can be considered in determining whether the insurer acted in bad faith under section 8371); <u>Rottmund v. Cont'l Assurance Co.</u>, 813 F. Supp. 1104 (E.D. Pa.1992) (holding that courts may look to other statutes upon the same or similar subjects to define bad faith under section 8371); <u>Coyne v. Allstate Ins. Co.</u>, 771 F. Supp. 673 (E.D. Pa. 1991) (holding that provisions of the UIPA can be utilized to describe conduct constituting bad faith). We note, however, that all of these cases occured prior to the Superior Court's test in <u>Tertelesky</u>, which was announced in 1994.

at hand." McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir.1980).  "We are not precluded from giving 'proper regard' to the holdings of the lower courts of the forum state in fashioning a conflict-of-laws rule, although, unlike the holdings of the state's highest court, they are not necessarily dispositive of the question." Gruber v. Owens-Illinois Inc., 899 F.2d 1366, 1369 (3d Cir. 1990) (quoting Nat'l Sur. Corp. v. Midland Bank, 551 F.2d 21, 29 (3d Cir. 1977)).  We are free to reach a contrary result if, by analyzing "other persuasive data," we predict that the [State] Supreme Court would hold otherwise.  Gruber, 899 F.2d at 1369; Nat'l Sur. Corp. 551 F.2d at 29-30.[12]

We adopt the logic of the Dinner court and reject that the alleged violations of UIPA and UCSP are bad faith per se for the following reasons. First, the standard for judging legal bad faith in section 8371 actions is the Tertelesky test.  Therefore, that an insurer may have allegedly violated a regulatory standard is irrelevant to our analysis. Second, the UIPA and the UCPS are designed to be implemented and enforced by the Insurance Commissioner of Pennsylvania—it is not our province to usurp the Commissioner's power in this regard by de facto regulation of the insurance industry under the guise of section 8371.  See Hardy v. Pennock Ins. Agency, Inc., 529 A.2d 471, 478 (Pa. Super. Ct. 1987).  The UIPA does not create a private cause of action for citizens.[13]  The UIPA may only be enforced by the Commissioner, and such

---

[12]See also O'Donnell v. Yanchulis, 875 F.2d 1059, 1063 (3d Cir. 1989); Goodwin v. Elkins & Co., 730 F.2d 99, 110 n.23 (3d Cir. 1984); Connecticut Mut. Life Ins. Co. v. Wyman, 718 F.2d 63, 65-66 (3d Cir. 1983); Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1981); Plummer v. Lederle Labs, 819 F.2d 349, 355 (2d Cir. 1987); Green v. J.C. Penney Auto Ins. Co., 806 F.2d 759, 761 (7th Cir.1986) ("Intermediate [state] appellate court cases are useful but not binding evidence of what the [state] Supreme Court would do").

[13]Although persons aggrieved by an insurance company's alleged violations of the UIPA may not bring a legal cause of action, an aggrieved person may request that the Department of Insurance review the act in question to determine whether it warrants an administrative hearing.  See Hardy, 529 A.2d at 478 (discussing the administrative review process outlined in J.C. Penney Cas. Ins. Co. v. Pennsylvania Dep't of Ins., 402 A.2d 558 (Pa. Commw. Ct. 1979)).

enforcement is wholly within the discretion of the Commissioner.  Finally, the UIPA

attempts to prevent and regulate violations *systemic* in the insurance industry, as only

violations committed "with a frequency that indicated a general business practice" are

sanctionable.  See 40 Pa. Stat. Ann. § 1171.5(a)(10) (1999); Loos, 476 F. Supp. 2d at

494 n.11.  Regulations designed for an industry are inapposite to evaluating an

individual episode of alleged bad faith.[14]  We write this, however, with the caveat that we

are aware of the standards laid out in the UIPA and the UCSP, and have considered

the defendant's conduct in light of them.  We will now evaluate the conduct of MetLife

by the two-prong Tertelesky test.

We conclude that Plaintiff has failed to fulfill her burden of proving each element

by clear and convincing evidence.  Looking to the first prong of the Tertelesky test, the

evidence establishes that MetLife's investigation into the fire and beneficiary

arrangement was reasonable.  After receiving the claims forms from both beneficiaries,

MetLife processed the claim, and transferred the funds owed into accounts for Plaintiff

and Smirman.  A claims processing period of a few weeks is entirely reasonable.  When

Smirman, the policyholder, questioned the beneficiary arrangement and whether the

cause of the house fire was accidental, MetLife acted appropriately by allowing the

policyholder a period in which to investigate the arrangement, requesting the fire

marshal's report, and promptly notifying the other beneficiary, Plaintiff.  We find that

delaying the distribution of the proceeds—which MetLife had already transferred into

---

[14]For example, we note that the conduct of an insurer towards a single insured could be egregious enough to constitute bad faith under 8371, but not sanctionable under the UIPA/UCSP framework because the conduct which gave rise to the bad faith was not committed frequently enough to indicate a general business practice. On the other hand, an insurer could have shoddy business practices systemically (such as continually failing to respond timely to correspondence from policyholders or continually failing to complete timely an investigation), which would not rise to bad faith to one policyholder. See Heinlein v. Progressive N. Ins. Co., 2007 WL 2071676, at *4 n.3 (W.D. Pa. Jul 17, 2007).

interest bearing accounts for each of the beneficiaries—pending the resolution of the disputed issues was reasonable.

As for Defendant's conduct after Plaintiff instituted the action in Pike County, we find it reasonable given the circumstances.  After Defendant received the report from the fire marshal, it determined that the fire was not suspicious, and attempted to pay out the proceeds by requesting a settlement agreement and release from both beneficiaries.  "When there is a dispute as to the money owed, it is reasonable, customary, and prudent for an insurer of anyone to get a release as part of the settlement of the disputed claim."  Leab v. Cincinnati Ins. Co., 1997 WL 360903, at *6 (E.D. Pa. Jun. 26, 1997).[15]  Likewise, we find that requesting a settlement agreement and release from both beneficiaries to be appropriate when one beneficiary has disputed the beneficiary arrangement and when the other beneficiary has sued the insurer over the proceeds of the policy.  See Kubrick v. Allstate Ins. Co., 2004 WL 45489, at *15 (E.D. Pa. Jan. 7, 2004); Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 593 (E.D. Pa. 1999) ("[I]t is not inappropriate for an insurance company to attempt to resolve all claims with one settlement, particularly when there is no indication of an attempt to mislead."); Watson v. Allstate Ins. Co., 28 F. Supp. 2d 942, 947 (M.D. Pa.

---

[15] In Hayes v. Harleysville Mut. Ins. Co., 841 A.2d 121 (Pa. Super. Ct. 2004), the Superior Court of Pennsylvania found that an insurer acted in bad faith when it required the insured to sign a settlement agreement and release for the claim and the potential bad faith claim in order to receive the value of the underinsured motorist claim. Hayes involved an insurance company misrepresenting the value of the policy coverage and failing to disclose documents which represented the true value of the coverage. Id. at 127.

While we agree with the outcome in Hayes given the facts of that case, it does not apply to the facts of this case, and we must look to the facts of each situation to determine whether the insured's conduct was reasonable. Hayes involved underinsured motorist coverage, specifically, how much the insurer was required to pay under the terms of the policy. The face value of the life-insurance policy is not disputed in the instant case. Instead, the proceeds of the policy were disputed by the beneficiaries. Furthermore, unlike the plaintiff in Hayes, the instant plaintiff filed suit against MetLife one month after she submitted the claim form. These differences alter whether the insurance company's actions were reasonable.

1998); Palucis v. Cont'l Ins. Co., 1998 WL 474108, at *2–3 (E.D. Pa. Jul. 16, 1998).  An

insurance company need not submerge its interests to that of a beneficiary.  See

Cowden v. Aetna Cas. & Surety Co., 134 A.2d 223, 228 (Pa. 1957).  We reject the

notion, which plaintiff advances, that Defendant insisted upon a release in order to

cover up a bad faith bungling of its handling of this claim.  MetLife has affirmatively

demonstrated a reasonable basis for its delay in distributing the life insurance

proceeds, and thus, summary judgment must be entered for them on Plaintiff's bad

faith claim.

We now consider each of Plaintiff's remaining claims.  Initially, we note that

although Plaintiff alleges five distinct causes of action in addition to the bad faith claim,

each is essentially a permutation of the bad faith claim.  All claims stem from Plaintiff's

dissatisfaction with MetLife's delay in distributing the life-insurance proceeds.  To be

thorough, we evaluate the claims individually under the governing Pennsylvania law.

II.      Breach of Contract Claim

Plaintiff contends that MetLife breached the life insurance contract by delaying

payment, which constituted a constructive denial, and by requiring Plaintiff to sign a

settlement agreement and release prior to distributing the proceeds.  In Pennsylvania,

to establish a breach of contract claim, a party must show (1) the existence of a

contract, including its essential terms, (2) a breach of duty imposed by the contract, and

(3) damages.  See Ware v. Rodate Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).  An

action for breach of an insurance contract does not lie when the policy proceeds have

been paid.  See Kubrick, 2004 WL 45489, at *9 (E.D. Pa. Jan. 7, 2004); Wiener v.

Banner Life Ins. Co., 2003 U.S. Dist. LEXIS 4957, at *25 (E.D. Pa. Feb. 28, 2003).  We

do not believe that Defendant breached the insurance contract, because MetLife paid

the proceeds of the policy.

Plaintiff fails to understand the role she played in this saga by instituting a lawsuit against MetLife one month after Plaintiff submitted her claim form.  The purpose of the release that MetLife sent to Plaintiff was to insulate MetLife from potential liability from the pending Pike County litigation.  Its purpose was not, as is often the case in accident insurance claims, to settle the value of the claim, see, e.g., Kubrick v. Allstate Ins. Co., 2004 WL 45489, at *5–6 (E.D. Pa. Jan. 7, 2004); Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 587 (E.D. Pa. 1999); Palucis v. Cont'l Ins. Co., 1998 WL 474108, at *1 (E.D. Pa. Jul. 16, 1998); the value of the claim was already established by the face value of the policy.  Any delay which occurred in the payment of the proceeds resulted from Plaintiff instituting litigation again MetLife.  Furthermore, MetLife did pay the proceeds without requiring the settlement agreement and release.  Because the purpose of the release was to settle the pending Pike County litigation and because MetLife did pay Plaintiff the proceeds owed, no breach of contract claim is cognizable, and summary judgment is entered in favor of Defendant.

III.   Remaining Claims of Breach of the Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Negligence, and Negligent Infliction of Emotional Distress

The issue here is which, if any, of the above-referenced claims are barred by Pennsylvania's gist of the action doctrine, which prevents ordinary breach of contract claims from being recast as tort claims.  See Bohler-Uddendolm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103–04 (3d Cir. 2001); eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  In its brief, MetLife contends that all of these claims should be dismissed under the gist of the action doctrine.  We agree as to the counts of negligence and negligent infliction of emotional distress, but disagree as to the counts of breach of fiduciary duty and breach of the covenant of good faith and fair dealing.

A.      Negligence

The gist of the action doctrine bars tort claims when (1) the tort claim arises solely from the contractual relationship with the parties; (2) the alleged duties breached were grounded in the contract itself; (3) any liability stems from the contract; and (4) the tort claim essentially duplicates the breach of contract claim. Reardon v. Allegheny Coll., 926 A.2d 477, 486 (Pa. Super. Ct. 2007). "[A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied by the law of torts." eToll, Inc., 811 A.2d at 15. Plaintiff contends that these claims should not be barred by the gist of the action doctrine because the defendant's obligations to Plaintiff arise from the larger social policies of the UIPA and the UCSP. The requirements of the UIPA and the UCSP are regulatory in nature, and do not arise to legal duties owed to the plaintiff. See discussion supra I. Any legal duties owed to Plaintiff arise from the parties' relationship of Insurer and Beneficiary, and this relationship is governed by the insurance policy—a contract. Therefore, summary judgment must be entered in Defendant's favor as to these counts.

B.      Good Faith and Fair Dealing

In Pennsylvania, "every contract has an implied term that the parties will perform their duties in good faith." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000); see Restatement (Second) of Contracts § 205. But see Ash v. Cont'l Ins. Co., 932 A.2d 877, 883 n.2 (Pa. 2007) (discussing whether the covenant of good faith and fair dealing is implied in every contract in Pennsylvania and declining to settle the issue). A cause of action for breach of the covenant of good faith and fair dealing is not a tort claim. Id. at 883. The duty of good faith and fair dealing is an implied covenant that arises in every contract, and thus, its breach is tantamount to a

17

breach of contract.  See id.  Therefore, a breach of the duty of good faith and fair dealing is not barred by the gist of the action doctrine.

In order to fulfil its obligation of good faith and fair dealing, an insurer need only "accord the interest of the insured the same faithful consideration it gave to its own interest" and evaluate the case honestly, intelligently, and objectively.  Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 227 (3d Cir. 2000).  We find that MetLife did give Plaintiff's interest the same consideration as its own.  MetLife processed the claim in less than a month from receipt of the claim form, and transferred the proceeds earmarked for Plaintiff into a separate money market account at that time. MetLife immediately communicated to Plaintiff that Smirman disputed the beneficiary arrangement and accidental nature of the fire.  MetLife also notified Smirman that Plaintiff was a rightful beneficiary.  Finally, MetLife continually requested that Plaintiff sign the release so that it could distribute the funds to Plaintiff.  In contrast to these actions, Plaintiff instituted litigation against MetLife one month after the claim was submitted, and ardently refused to sign the release, despite the fact that Plaintiff and MetLife were still adversaries in a pending lawsuit.  No evidence presented in either party's briefs supports a finding that MetLife acted less than honestly, intelligently, and objectively in processing Plaintiff's claim.  We find that MetLife acted in good faith, and therefore, summary judgment on this count will be entered for them.

C.    Fiduciary Duty

The Supreme Court of Pennsylvania recognizes certain circumstances in which an insurer owes a fiduciary duty to an insured.  For example, an insurer acts as a fiduciary when it exerts its rights under a policy to handle all claims against the insured or to make a binding settlement.  See Birth Ctr. v. St. Paul Cos., 787 A.2d 386, 389 n.17 (Pa. 2001); Gedeon v. State Farm Mut. Ins. Co., 188 A.2d 320, 322 (Pa. 1963). However, "[a]s a general rule, a life insurance company has no fiduciary obligation to

18

the beneficiary; their relationship is solely a matter of contract." <u>Benefit Trust Life Ins.</u> <u>Co. v. Union Nat'l Bank of Pittsburgh</u>, 776 F.2d 1174, 1177 (3d Cir. 1985).  MetLife has no fiduciary obligation to Plaintiff because the contract at issue is one of life insurance and because the circumstances which the Supreme Court of Pennsylvania have identified as giving rise to a fiduciary relationship are not present here.  Therefore, summary judgment is granted in favor of MetLife.

      D.    Negligent Infliction of Emotional Distress

      To state a claim for negligent infliction of emotional distress, a plaintiff must allege that she is foreseeable and that she suffered a physical injury as a result of the defendant's negligence.  <u>Armstrong v. Paoli Mem'l Hosp.</u>, 633 A.2d 605, 609 (Pa. Super. Ct. 1993).  Such claims will lie in four circumstances: (1) where the plaintiff suffered a physical injury and consequently experiences psychological and emotional pain and suffering; (2) where the plaintiff observed injury to a close family member and is as a consequence of the shock emotionally distressed; (3) where the plaintiff nearly experiences a physical impact in that he was in the zone of danger of the defendant's tortious conduct; or (4) where a contractual or fiduciary duty exists.  <u>Clay v. Option One</u> <u>Mortgage Corp.</u>, 2007 WL 2728972, at *5 (E.D. Pa. Sept. 18, 2007) (citing <u>Armstrong</u>, 633 A.2d at 609, 615); <u>Brown v. Philadelphia Coll. of Osteopathic Med.</u>, 674 A.2d 1130, 1134–35 (Pa. Super. Ct. 1996).  Because the MetLife does not stand in a fiduciary capacity to Plaintiff, <u>see</u> <u>supra</u> III.C, any duty owed to Plaintiff must be contractual, and arise from the insurance contract.  Thus, Plaintiff's claim for negligent inflection of emotional distress is barred by the gist of the action doctrine.

<strong>Conclusion</strong>

      Viewing the evidence in the light most favorable to Plaintiff, we find that Plaintiff has failed to raise a genuine issue of material fact, and has failed to proffer evidence to support a dispute of material fact.  As we have discussed at length in this

19

memorandum, weighing the uncontradicted evidence presented, we find that Defendant is entitled to summary judgment on all counts contained in Plaintiff's complaint.  An appropriate order follows.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

_____
                                      :
JOANNE OEHLMANN,                      :
                                      :
                     Plaintiff,       :
                                      :     Case No. 3:06-CV-01075
          v.                          :
                                      :     (Judge Kosik)
                                      :
METROPOLITAN LIFE INSURANCE           :
COMPANY,                              :
                                      :
                     Defendant.       :
_____     :

## ORDER

AND NOW, this 21st day of December, 2007, IT IS HEREBY ORDERED THAT:

1.  Defendant's motion for summary judgment on all counts of Plaintiff's complaint is GRANTED;

2.  Judgment is hereby entered in favor of Defendant and against Plaintiff;

3.  Third-party defendant Todd H. Smirman is DISMISSED from this case;

4.  The Clerk of Court is directed to CLOSE this case.


                    *s/Edwin M. Kosik*

                    United States District Judge